Next case we have for this morning is case number 416-0769 and 416-0774, in re A.H. And for the appellant we have Ms. Mayo. And is it Mayo or Mayo? Actually, your honor, I recently changed it to Vig. Vig? Okay, Ms. Vig, thank you. How is that spelled? V-I-G. Thank you. And then for the appellant we have Mr. Londrigan. Mr. Londrigan, proceed, counsel. Thank you, your honor. May it please the court, counsel. Counsel, my remarks are actually brief this morning. I largely took oral argument because it is my experience that not many attorneys or judges have actually been through the trial process of a juvenile abuse and neglect case. And I took oral argument because I am in the fortunate position that I have. I worked for about three years with the Sangamon County Public Defender's Office. And I did almost exclusively juvenile abuse and neglect work. And so I took this argument today, your honors, because I wanted to impress upon the court that as I review this case, with my experience, Ms. Buckner was saveable. My client was saveable. If her attorney had done simple things, she was a saveable client. This was a case that could easily, easily have gone the other way. It starts with the goal changes are everything in these cases. And for an attorney to stand up in front of a judge and to simply say, we have no position, your honor, I take no position on whether or not you should change the goal, that can never be effective. Well, counsel, you reference your experience, and I too have experience. I handled the abuse and neglect cases for about four years straight after being an assistant public defender representing parents, and also after being a guardian at line representing children. And we know that in these cases we have reports from the various service providers who are working with the family. And I guess my question is, do you believe that those reports were inaccurate in this case? I think that's an excellent question. I think there are parts in those reports that the attorney should have fleshed out more. For instance, when the caseworker says, well, she had a visitation, but she was hugging that kid too much. That was way too much, and he didn't want it. Well, let's take a minute. Why didn't he ask, you know, this kid is seven. Sometimes mamas like to hug, and sometimes their babies, not because they don't like the hug, but just because they're seven. You know, mom, I'm playing with my toy right now. What's going on in that room? What is actually happening? I guess I'm thinking more about all the missed drug drops, not necessarily completing services other than parenting classes. I understand what Your Honor is talking about, and I don't know answers. I don't know if there are things that are not in the record that I cannot speak to. I don't know that. What I do know, Your Honor, is that there were places that he didn't flesh out. For another example, the caseworker says, well, she wouldn't cooperate with the unannounced visits. How in the world? The whole purpose of it's unannounced is you don't know what's happening. So does the caseworker mean she's knocking on the door and my client's not home? What does that mean? I'm not even sure. How do you not cooperate? So that's ineffective assistance of counsel? The fact that he didn't even address those things. He didn't even point that out to the court. And that's ineffective assistance of counsel? That's not reasonable behavior by counsel? No, not in this case, Your Honor. Because it would have mattered? It would have mattered, I think absolutely. Here's the other thing. This Court has written the permanency review hearings. These are essentially continuations of dispositional hearings. Entirely left to the Court's discretion, there are no rules of evidence that apply. That's all correct, is it not? Yes. Okay. So the Court gets these reports to consider them as it wishes, and the absence of an argument about trying to diminish the effect would constitute ineffective assistance? I think for two reasons in this case. One, Your Honor, you can see in the record clearly that counsel was not doing anything. Well, my client has some excuses, Your Honor, but I'm not even going to tell you what those are. That's at the goal change hearing. Two, I think counsel had a fundamental misunderstanding about what these hearings entailed. The first hearing was fitness. This is where we decide, should we declare this parent unfit? This is where we put all the evidence of the requirements. Well, the first hearing is whether this child should be made a ward of the court, and is the parent fit to have custody of this child? At the adjudication. At the adjudication. That's the dispositional hearing and thereafter. And the Court heard lots of evidence concerning all that. Are you saying that the initial dispositional hearing was ineffective assistance of counsel? I'm sorry, Your Honor. I was speaking of the termination hearing. Well, that's the other thing. You focus a lot on permanency review hearings. To the best of my knowledge, there is no case that applies the ineffective assistance of counsel claim to such hearings. I mean, not only is there none that's founded, I haven't seen any case where it's even been raised before. So we'd be the first. I think there's nothing wrong with that. I think the way these cases come down, Your Honor, is that if you're not objecting at those goal changes and the Court is changing the goal, you're putting your client behind the eight ball. If you're objecting to the goal change, even if you can only get your client another three months to do these services, another two months, you keep giving your client more time. That's what you do. So should we, in making this argument, shouldn't there be some burden on it would matter? I think it would have mattered. Based on what? Given what was before the trial court to raise a question or to cross-examine these people? By the way, there's no even right to cross-examine them. You can just accept this stuff for what it is. I think that it would have mattered, Your Honor. If you look at what counsel ultimately did in the best interest hearing, he put the evidence on in the best interest hearing that he should have been putting on in the fitness hearing. If he had put the evidence on in the fitness hearing like he was supposed to, the judge may not have found that the parent was unfit and may have given the parent more time. And I don't think that's an unreasonable position, given that in the best interest hearing we learn, well, we get further evidence. We learned it from the GAL at the fitness portion. In the best interest hearing, we learn that, oh, even though the only allegation against Ms. Buckner was her drug use, right, she had actually stepped herself down in the services that she needed. She started out as a level two when she was evaluated. She's now a level one. Why are we not telling? That's progress. Why are we not telling the judge? Well, reasonable progress means this kid's going to be able to be put back in her home in the near future. What evidence is there to show that? Well, one is the evidence that the oldest girl didn't want her mom's rights terminated. That doesn't answer my question. What evidence is there to show that this kid at the best interest hearing is ready to be placed back with mom? I don't know that there was any. I don't know if that was put in the record, Your Honor. But I can say that that doesn't always have to happen. So if counsel had intended. . . That's the definition of reasonable progress. It was found to be not to have made reasonable progress in the termination portion. Now we're at the best interest hearing. And you're arguing, and this is the next question, I'm familiar with some cases that have held ineffective assistance if counsel applies to the hearing at which a parent has been found unfit under the Adoption Act or a parent is found to be neglectful or abusive under the Juvenile Court Act. Is there any case where the argument has even been raised about ineffective assistance regarding the best interest phase of a termination proceeding? If there was, I didn't find it. We'd be the first. So I suppose my question is this, looking at your argument about, well, the witnesses who didn't appear and how do we know what they'd say? Of course, there was no suggestion of that, regrettably. But given the history before this Court, given that the issue is what's in the best interest of the child, tell me what these two witnesses could have testified to, just speculate wildly for me, so that it could possibly have made a difference. Judge, I couldn't even begin to speculate. I don't know. I don't know what they were going to say. I think that my point in that is, again, we come back to, all of these witnesses should have been put on at the fitness portion. Counsel fundamentally did not understand how this hearing worked. He didn't understand. He should have been putting this evidence on in the fitness portion because he should have been doing everything he could in his power to make sure the Court did not find his client to be unfit. That should have been his goal. He dropped the ball or he didn't know how it worked because it's clear he was saving this evidence for best interest. This older wife asked you about the business about failing on the drugs, for instance. Why wouldn't that have been enough in itself after all these years to say, you're not making reasonable progress because reasonable progress means in the near future, this kid can be returned to you, and clearly that's never going to happen. What evidence could possibly have been presented that, for instance, would have addressed that? Well, and I think that was the other issue that we had, Your Honor, is there was evidence that was unfortunately put on not until the best interest hearing. There was evidence that Ms. Buckner had actually been doing the counseling, that she did go from a level two to a level one. I think that's the problem, Your Honor, is that her attorney didn't show the Court all that was there. There were clearly things there. And this evidence would have showed, judge, see, in the near future, this child is going to be able to be returned to her because of the reasonable progress she's now making. I don't know because, Your Honor, I think part of the problem is... But isn't that the standard? Because of the reason, yes. In the near future, because of the progress she's made, this kid's going to be able to be returned. It is, and I guess, Your Honor, what I'm saying is because counsel didn't do his job, we don't know. I mean, I find it completely troubling that at a goal change hearing, he's saying, my client has some excuses, but I'm not going to tell the Court. So we don't know. But maybe there was actually something there that the Court didn't know, that the Court should have known before it made a decision. That's the problem, is that counsel just... Was counsel making a decision not to offer to the Court excuses? Well, even if he was, I guess maybe you say it... I just can't imagine saying, my client has some excuses, but I'm not going to share them with you. I don't know. I understand your point, Your Honor. I understand your point. Well, isn't that a matter of effective advocacy, right? You know, you're an experienced trial lawyer. Don't you think this question, is the judge going to buy any of this? Is it likely to make any difference? Is it likely to be persuasive? I've been there, and I know exactly what Your Honors are talking about, and I don't know. And I think that, again, my issue is, counsel just didn't do the things that he needed to do throughout the case. He should have been objecting at a minimum. I just keep coming back to these reports and her lack of progress, and even the two witnesses that are mentioned where they requested the continuance for those witnesses. Those are basically family members, and so we're not even suggesting that we've got a couple of treatment providers who want to come in here and maybe say something that completely contradicts what's been established so far. I mean, these are family members. I understand. I understand. I guess, in the end result, I believe my client should have been given a little more leeway. I don't know if Your Honors realize this is, Mr. Harris is the beast and murderer he is. That's this case, and I mean, this county knew this case so well they had to change the venue, so that's sort of underlying all of this. I just feel like if her attorney had been objecting, she may have had a shot at this. That's all I have. Thank you, Counsel. You'll have time on rebuttal if you so desire. Mr. Londrigan. Good morning, Your Honors. May it please the Court, Counsel. These matters are always difficult. I mean, no court wants to be put in the position of having to remove the children of a parent. However, the state has certain responsibilities as well to make sure that these children have some attempt at being raised appropriately. The evidence before this particular court, this went on at least a year and a half, perhaps from February of 15 through October of 16. I think I counted at least 10 separate hearings before the court. So this woman is repeatedly brought before the court, the court spending a great deal of time and resources trying to help the lady along. She obviously has a great many problems of rulemaking or not. I don't know. Yes, her husband took the lives of many of her family members and is serving multiple life terms for that. She appears to be suffering from mental problems associated with that, perhaps other issues. I don't know. She's obviously a drug user. She's probably an addict. The arm of the court in trying to make these determinations is the Department of Children and Family Services. They make their reports and they submit them to the court. Of course, they're subject to additional evidence. But these reports come back and they suggest that this particular respondent has done nothing to meet any of the goals that have been established. I don't care how often the defense counsel objects or stomps his foot or parades around the court, the court is not going to ignore the report in front of it. It's not going to ignore the evidence from its own arm and it's going to make the findings that it feels it's required to make, not that it wants to make, but what it's required to make for the best interest of these children. And I think that's what was done in this instance. Unfortunately, this lady has a lot of problems. She was not getting better. She was getting worse. The court made that finding on consecutive hearings. Perhaps there was some language initially where the court said, I find unfit, I don't think deficient to terminate, had not been filed at that time. I think what the court was meaning is that it found the parent unfit to return the children to the parent's custody. The unfitness hearing actually wasn't held until July of 16. So perhaps the court was using the same term in different meanings. But the bottom line is it doesn't matter what the defense counsel objected to. I agree with Justice Stegman. I can't imagine what possibly these additional witnesses could have said in October of 2016 to change the judge's rule. Unfortunately, this lady just has problems that she's having a very difficult time dealing with and her children deserve a better chance at life. If there's no further questions. I don't see any. Thank you. Any rebuttals? Thank you. We'll take the matter under advisement and be in recess until next case.